UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:04CV-71-J

PATRICIA E. DITZER                                                   PLAINTIFF

v.

JO ANNE B. BARNHART,
Commissioner of Social Security                               DEFENDANT

**MEMORANDUM OPINION**

       This case is before the Court upon review of plaintiff Patricia Ditzer's objections to Magistrate Judge Goebel's Findings of Fact, Conclusions of Law, and Recommendation that her Social Security applications for Title II and Title XVI benefits be denied. After conducting a de novo review of Ms. Ditzer's specific written objections, the Court adopts the magistrate's recommendation and the Commissioner's determination is affirmed.

       Ms. Ditzer initially filed applications for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB") on July 17, 2000 alleging that she became disabled in March of 1997 as a result of difficulties with her back, neck and head (Tr. 59). These applications were denied in a written decision by Administrative Law Judge Tom Capshaw on July 25, 2001 (Tr. 291), from which Ms. Ditzer appealed. While these matters were on appeal and pending before the United States District Court, Ms. Ditzer re-filed an application for SSI on December 20, 2001. On July 3, 2002, the United States District Court remanded her case to the Commissioner for further evaluation (Tr. 308). For purposes of determination, the December 20, 2001 SSI application was consolidated with the claimant's previous applications for DIB and SSI.

       Pursuant to the remand, a second hearing was conducted on December 5, 2002, wherein Administrative Law Judge Anne C. Pritchett ("ALJ") found that Ms. Ditzer suffers from soft tissue

injury of the muscles, tendons and ligaments, impairments that are severe but do not meet or medically equal listed impairments (Tr. 248). The ALJ found that Ms. Ditzer is able to perform her past relevant work as a sewing machine operator, and that she retains the residual functional capacity to lift and carry five pounds frequently and 10 pounds occasionally, stand/walk six hours per day for two hours at a time, and sit six hours per eight hour day for two hours at a time (Tr. 251).

This Court's review of the Commissioner's findings is limited to determining whether they are supported by substantial evidence, 42 U.S.C. §405(g); Elam ex rel. Golay v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003) and whether the correct legal standards were applied, Landsaw v. Secretary of HHS, 803 F.2d 211, 213 (6th Cir. 1986). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even if the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). It is within the parameters of the substantial evidence rule that this Court addresses and rejects each of Ms. Ditzer's objections, which

are summarized as follows: (1) the ALJ failed to properly evaluate Ms. Ditzer's mental impairments and should have re-contacted psychiatrist Dr. Eberle in an attempt to resolve the conflicts between Dr. Eberle's GAF rating and his narrative report; (2) the ALJ erred in her residual functional capacity finding; and (3) the ALJ erred in finding Ms. Ditzer capable of performing her prior work as a sewing machine operator.

Ms. Ditzer's first contention is that the ALJ failed to find her mental impairment "severe" at the second step in the sequential evaluation process. It is a well-established principle that the plaintiff bears the burden of demonstrating a severe impairment at step two of the sequential evaluation process, 20 C.F.R. §404.1520(c, §416.920c). Ms. Ditzer's argument relies heavily upon "Global Assessment of Functioning" scores assigned by her social worker and psychiatrist, scores of 45 and 50 respectively. Social worker Jim Mingo diagnosed Ms. Ditzer with major depression due to chronic pain and assigned a GAF of 45 (Tr. 442). However, under the regulations, a licensed social worker is not a medical provider capable of rendering a medical opinion, 20 C.F.R. §404.1513(d), §416.913(d); Walters v. Commissioner, 127 F.3d 525, 530 (6th Cir. 1997). Thus, the ALJ did not err in refusing to consider Mr. Mingo's opinions in making the step two determination as to the severity of Ms. Dizter's mental condition.

According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. ("DSM-IV"), the Axis V GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. A range of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends unable to keep job). The GAF assessment, standing alone, is a poor tool for determining one's ability to

engage in substantial gainful employment, as occupational functioning is only one of three fields considered in assigning a GAF score. Additionally, use of a scale of 1 to 100 to assess all psychiatric and psychological considerations is a system that lends itself to approximation and considerable variation in interpretation even among experts. Finally, some factors that might result in a low GAF would be largely irrelevant to occupational capacity (such as suicidal ideation), while a higher GAF score may not account for symptoms that severely interfere with the ability to work (such as conflicts with co-workers).

While the GAF is a single piece of information to be considered in the disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics of a claimant. Where there is specific information available, vacating a decision solely upon the basis of a claimant's GAF score is inappropriate. Accordingly, when considering the GAF of 50 assigned by Dr. Eberle (which indicates "serious" mental difficulties), the ALJ noted that it was inconsistent with the doctor's own narrative report (Tr. 248). In light of the inconsistency, the ALJ was well-within her discretion in electing to give greater weight to the narrative, 20 C.F.R. §404.1527(d)(2), §416.927(d)(2). The Court finds that ALJ Pritchett properly evaluated Ms. Ditzer's mental impairment at step two of the sequential evaluation process, and her findings are supported by substantial evidence.

Ms. Ditzer also alleges that the ALJ erred by failing to re-contact psychiatrist Dr. Eberle pursuant to 20 C.F.R. §404.1512(e), 20 C.F.R. §416.912(e) and Social Security Ruling 96-5p. Specifically, Ms. Ditzer suggests that where there is a conflict in a treating physician's opinion, the Commissioner is required to undertake further action in an attempt to resolve the conflict (Plaintiff's Objections to the Magistrate Report, page 3). However, this Court's reading of Social Security

Ruling 96-5p differs from that of the claimant. Specifically, Social Security Ruling 96-5p indicates that the regulations require the Commissioner to "make every reasonable effort to re-contact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." In Ms. Ditzer's case, there was no such opinion rendered by Dr. Eberle which would require re-contacting for clarification. Furthermore, the narrative report contains sufficient bases for Dr. Eberle's opinion, but those bases simply did not support the "serious impairment" level GAF score of 50 (which the ALJ found to be inconsistent with other evidence of record). In sum, Dr. Eberle's narrative report was sufficiently complete for the ALJ to make a preliminary determination that the claimant did not have a severe mental impairment and thus, the provisions of 20 C.F.R. §404.1512(e) and 20 C.F.R. §416.912(e) are inapplicable.

Next, Ms. Ditzer argues that the ALJ erred in the step four analysis, particularly with regard to the residual functional capacity findings. Specifically, she disagrees with the ALJ's credibility findings, as she believes that her complaints of pain and limitation are supported by evidence in the record. As complaints of pain are subjective, they necessarily require significant consideration of the credibility of the claimant, Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). This Court gives great deference to the credibility determinations of the ALJ, as the ALJ has the opportunity to observe the demeanor of the claimant, Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987).

This Court's review of the Decision reveals numerous reasons for the ALJ's finding claimant's testimony to be exaggerated, including inconsistencies between Ms. Ditzer's statements and the evidence, the lack of objective medical evidence to support the pain allegations, and Ms. Ditzer's use of medication to control her symptoms (Tr. 249). An ALJ may distrust a claimant's

5

allegations of disabling symptomology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other, Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Discounting credibility of a claimant is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence, Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). We conclude that the ALJ's assessment of Ms. Ditzer's credibility finds substantial support in the record and thus warrants our deference.

Ms. Ditzer next faults the ALJ for failing to properly evaluate the opinion of Dr. Moore, her treating physician. Specifically, the claimant points to Dr. Moore's deposition testimony for support of her contentions that her pain and limitations are "100% legitimate" and that she would require a sit/stand option. This Court's reading of Dr. Moore's deposition testimony differs somewhat from that of the claimant. Dr. Moore did testify that he thought Ms. Ditzer was a 100% legitimate patient (Tr. 146), but this says nothing about her complaints of pain and limitations. Furthermore, the sit/stand option is contained in a hypothetical question posed to Dr. Moore by plaintiff's counsel (Tr.156), and Dr. Moore's testimony suggests that Ms. Ditzer could eventually go back to work with certain accommodations (Tr. 156).

It is noteworthy that ALJ Capshaw's prior Decision did include the sit/stand option in his residual functional capacity finding (Tr. 14). Plaintiff objects to ALJ Pritchett's granting great weight to the residual functional capacity findings of ALJ Capshaw and adopting those findings, with some "further refinements" (Tr. 249). Where ALJ Capshaw's findings were that plaintiff "have the option to alternate sitting and standing as needed in the workplace and that she be able to walk, sit or stand in two hour segments during an eight hour workday" (Tr. 14), ALJ Pritchett found that plaintiff can "stand/walk six hours per day for two hours at a time, and sit six hours per eight hour

day for two hours at a time" (Tr. 249). These findings are consistent with each other, and with the record, and are entitled to deference by this Court.

Plaintiff's next contention is with ALJ Pritchett's finding that she worked as a sewing machine operator. Ms. Ditzer testified at two hearings that she was a sewing machine operator (Tr. 186, 475), in addition to filling out a work background questionnaire denoting herself as a "sewing machine operator" (Tr. 377). The record adequately supports the ALJ's finding regarding Ms. Ditzer's prior work as a sewing machine operator.

Next, Ms. Ditzer contests the vocational expert testimony regarding her past relevant work. Based upon a complete and accurate hypothetical posed by the ALJ to the VE (Tr. 486-487), the VE testified that Ms. Ditzer could perform sewing machine operation work as it is normally performed (Tr. 487). Plaintiff faults the VE for testifying that the Dictionary of Occupational Titles classifies the sewing machine operator as an SVP of 5, when it actually is an SVP of 3. However, the Court agrees that this error is harmless at most, because the difference in skill level required is actually less than that which the VE testified to. Additionally, the plaintiff points out that the DOT description for sewing machine operator references frequent use of both upper extremities. Plaintiff suggests that the ALJ's placement of a functional limitation of "no rapid repetitive movements of the dominant right hand" would preclude frequent use of both upper extremities. This position is simply illogical, and without merit. In sum, there are several minor inconsistencies between the VE's testimony and the DOT. Furthermore, the ALJ failed to clarify whether the VE's testimony was consistent with the DOT as is required by Social Security Ruling 00-4p, but such failure is harmless because of the very minor inconsistencies noted, and they are not outcome determinative.

For these reasons, the findings and recommendations of the magistrate are adopted.